NO. 12-04-00202-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS                                   §                 APPEAL FROM THE 

 
FOR THE BEST INTEREST                            §                 COUNTY COURT AT LAW

 
AND PROTECTION OF L.F.D                        §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant L.F.D. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered L.F.D. committed to Rusk State Hospital for a period not to exceed ninety days and
entered an order authorizing the Texas Department of Mental Health and Mental Retardation to
administer psychoactive medication to L.F.D. In two issues, L.F.D. asserts the evidence is legally
and factually insufficient to support these orders. We affirm.
 
Background
            On June 8, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit L.F.D. to Rusk State Hospital for a period not to
exceed ninety days. The State supported its application with a certificate of medical examination
for mental illness, prepared by Dr. David Self. Dr. Self examined L.F.D. on June 7 and diagnosed
her as suffering from bipolar disorder type II, most recent episode manic and psychosis. In his
physician’s certificate, Dr. Self stated that L.F.D. is mentally ill, is likely to cause serious harm to
herself or others, and is suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs,
including food, clothing, health, or safety, and is unable to make a rational and informed decision
as to whether or not to submit to treatment. Dr. Self reached this conclusion because L.F.D. admits
to having “visions” and hearing noises and voices for approximately ten days. L.F.D. had not slept
for ten days and made a statement about “sacrificing” herself, her daughter, and her grandchildren.
She also stripped naked in jail and tried to flush her clothes down the toilet to be closer to God. 
L.F.D. believed that she must battle the antichrist. She also refused all medications. 
            On the same day, Dr. John Pack examined L.F.D. He concluded she suffers from psychotic
disorder N.O.S. and severe and abnormal mental, emotional, or physical distress, is experiencing
substantial mental or physical deterioration of her ability to function independently, which is
exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including
food, clothing, health, or safety, and is unable to make a rational and informed decision as to whether
or not to submit to treatment. Dr. Pack based his opinion on L.F.D.’s statement that all bar codes
are dangerous and must be removed. L.F.D. tried to stuff her clothes down the commode because
they were filled with the devil. She cut the tags out of her clothing because “they are dangerous, the
antichrist.” She hears voices from God. 
            Dr. Pack also believes that L.F.D. presents a substantial risk of serious harm to herself or
others, which is demonstrated by evidence of severe emotional distress and deterioration in her
mental condition to the extent that she cannot remain at liberty. He based his opinion on L.F.D.’s
statements that she is convinced that God has given her special powers and that she has not slept for
a week. Dr. Pack found L.F.D. to be delusional and paranoid, getting extremely emotional, talking
very loudly, and talking about the tags on clothes, the beast, and the devil. Pack concluded that
L.F.D. was psychotic at the time of her examination. 
            At a hearing held on June 15, Dr. Sethurama Srinivasan testified, agreeing with Dr. Self’s
diagnosis that L.F.D. is mentally ill, suffering from bipolar disorder, type II, M.R.E., manic with
psychosis. He disagreed with Dr. Self only in that Dr. Srinivasan believes that L.F.D. is able to take
care of her basic daily needs. But Dr. Srinivasan agreed that L.F.D. is likely to cause serious harm
to herself or others. The doctor based his conclusion on L.F.D.’s delusions that (1) she is Jesus, (2)
she has to fight antichrist, (3) she has to sacrifice herself, and (4) she has to sacrifice her daughter
and grandchildren. Dr. Srinivasan stated that they kept L.F.D. on one-to-one observation for a week
because she continued to have these delusions. Although she has not tried anything while at the
hospital, she is refusing any treatment because she does not believe that anything is wrong with her. 
The doctor stated Rusk State Hospital is the least restrictive option available.
            On cross examination, Dr. Srinivasan stated that L.F.D. was administered emergency
medication on the day of her admission because of psychotic agitation. Since then, she has been
pleasant. At the time of the hearing, L.F.D. had been taken off one-to-one observation because she
had not acted on any of her delusions, although she still expressed the ideas. L.F.D. rejected taking 
medications not because of her religious beliefs, but because she does not believe there is anything
wrong with her. Dr. Srinivasan stated that if L.F.D. were not in a controlled environment, she would
likely act on her delusions of harming herself and others because she believes in her religious
delusions and does not see anything wrong with her ideas.
            L.F.D. testified on her own behalf. She denied wishing to harm herself or her family. L.F.D.
also stated she did not believe God was telling her to sacrifice herself or her family. L.F.D. had been
eating and sleeping “good” and denied hearing noises or voices. She stated that the daughter “that
is saying this stuff about me has been in and out of institutions most of her life.” L.F.D. testified that
she lived alone before her daughter and grandchildren came to live with her. When asked if she had
told anyone that she wanted to hurt herself or her daughter or grandchildren, she responded, “Not
to my knowledge.” L.F.D. said she takes medications that she needs, Bactrim for a urinary tract
infection and Premarin.
            On cross examination, L.F.D. admitted that she told Dr. Pack that she had been on
medication for depression, but the Lord healed her and she no longer needed the medication. She
stated that she told the doctor that there is good and evil and that God has given her a burden to pray
for her family and country, but denied saying that she had special powers. When asked about her
comment to Dr. Pack that her life was in danger, L.F.D. explained that she had been living in a home
with no electricity and she feared a heat stroke. She believes a heat stroke caused her to remove her
clothing at the jail, although she has no clear memories of the episode. L.F.D. stated that her
religious beliefs dictate that it is not appropriate to hurt yourself or others.
            On June 15, the trial court entered an order of temporary inpatient mental health services after
determining that the evidence supports the allegations that L.F.D. is mentally ill and is likely to cause
serious harm to herself or others. The trial court ordered L.F.D. committed to Rusk State Hospital
for a period not to exceed ninety days. 
            The same day, Dr. Self submitted an application for an order to administer psychoactive
medication. In his physician’s certificate, Dr. Self noted that L.F.D. refuses verbally to take
medication voluntarily. He believes L.F.D. lacks the capacity to make a decision regarding the
medication because she suffers from delusional thoughts and her manic mood distorts her perception
and judgment. Dr. Self believes that she should improve if she is treated with the medications. 
Without them, the doctor believes L.F.D. will deteriorate further. 
            A medication hearing was held on July 15. Dr. Srinivasan testified that based on his review
of L.F.D.’s record and his experience with L.F.D., he agrees with Dr. Self that L.F.D. lacks the
capacity to make a rational and informed decision about whether or not to consent to the
administration of medication. He also agrees that treatment with the listed medications is the proper
course of treatment for L.F.D. and that the benefits will outweigh the risks. 
            On cross-examination, Dr. Srinivasan reiterated that L.F.D. refused to take medications
because she does not believe she is mentally ill. The doctor explained that she was able to take care
of her basic daily living needs, but because she is psychotic, she is unable to make decisions about
psychoactive medication. Dr. Srinivasan believes that there are no alternative medications that
would effectively treat L.F.D. and that treatment with medication would shorten her stay at the
hospital.
            L.F.D. testified on her own behalf. She claimed that if the doctors could prove to her that
she needed the medications, she would take them. She denied having any religious objections to the
use of medication. In an order signed that day, the trial court authorized the hospital officials to treat
L.F.D. with psychoactive medication. This appeal followed.
 
Sufficiency of the Evidence
            In her first issue, L.F.D. asserts the evidence is neither legally nor factually sufficient to
support the order of commitment. She complains that the State did not present evidence of an overt
act or a continuing pattern of behavior to support the commitment. In her second issue, L.F.D. asserts
the evidence is neither legally nor factually sufficient to support the order authorizing administration
of psychoactive medication. She argues that the State did not present clear and convincing evidence
that she lacked the capacity to make a decision regarding administration of psychoactive medication.



Standard of Review
            In a legal sufficiency review where the burden is clear and convincing, the reviewing court
must consider all of the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In re
J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court
should disregard all evidence that a reasonable factfinder could have disbelieved or found to have
been incredible. Id.
            In addressing a factual sufficiency challenge, we must consider all of the evidence in the
record, both that in support of and contrary to the trial court’s findings. In re C.H., 89 S.W.3d 17,
27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of
the State’s allegations. Id. We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. In re
C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and
the weight to be given their testimony. See id. at 27; In re J.J.O.,131 S.W.3d 618, 632 (Tex.
App.–Fort Worth 2004, no pet.).
Involuntary Commitment Order
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness, she is likely to cause serious
harm to herself, is likely to cause serious harm to others, or is (1) suffering severe and abnormal
mental, emotional, or physical distress, (2) experiencing substantial mental or physical deterioration
of her ability to function independently, which is exhibited by her inability, except for reasons of
indigence, to provide for her basic needs, including food, clothing, health, or safety, and (3) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute,
the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of her ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that L.F.D. is mentally ill, suffering from
bipolar II disorder M.R.E. manic with psychosis. However, expert testimony confirming mental
illness, standing alone, will not support an involuntary commitment. E.g., T.G. v. State, 7 S.W.3d
248, 252 (Tex. App.–Dallas 1999, no pet.). Dr. Srinivasan testified about L.F.D.’s delusions that
she is Jesus, she has to fight antichrist, and she has to “sacrifice” herself and her family. He also
testified that L.F.D. has not acted on her delusions, but still expresses the ideas. Dr. Srinivasan
expressed his opinion that L.F.D. would likely act on her delusions if she were not in a controlled
environment because she does not see anything wrong with her ideas. This testimony provides
evidence of a continuing pattern of behavior that tends to confirm that L.F.D. is likely to cause
serious harm to herself or others. The trial court could have disbelieved L.F.D.’s testimony to the
contrary. See In re J.F.C., 96 S.W.3d at 266. 
            The trial court found that L.F.D. was likely to cause serious harm to herself or others. 
Considering all the evidence in the light most favorable to the findings, we conclude a reasonable
trier of fact could have formed a firm belief or conviction that this finding was true. See In re
J.F.C., 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court’s
order. See id. 
            In addressing L.F.D.’s factual sufficiency complaint, we consider the evidence the factfinder
could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. There is
some evidence that L.F.D. can take care of her basic daily needs. Dr. Srinivasan also stated that
L.F.D. is a pleasant person and had not threatened anyone at the hospital. However, the doctor
testified that L.F.D. stated that she was Jesus and needed to “sacrifice” herself and her family. All
three doctors found her to be delusional and psychotic. We also consider L.F.D.’s testimony that she
does not hear voices, that she does not remember saying that she was Jesus and needed to sacrifice
herself or others, and that it is against her religious beliefs to injure herself or others. To the
contrary, the Lord directed her to pray for her family. L.F.D. also testified that her daughter who
made the allegations against her had been in mental institutions all her life, suffering from her own
delusions.
            The trial court was entitled to disbelieve L.F.D.’s testimony and disregard evidence contrary
to the State’s position. See In re C.H., 89 S.W.3d at 27. Accordingly, in light of the entire record,
the evidence that the trial court could not have credited in favor of its findings is not so significant
that it could not reasonably form a firm belief or conviction that L.F.D. is mentally ill and is likely
to harm herself or others. See id. Thus, the evidence is factually sufficient to support the trial court’s
findings. Because we hold the evidence is both legally and factually sufficient to support the trial
court’s order, we overrule L.F.D.’s first issue.
Psychoactive Medication
            In her second issue, L.F.D. asserts the evidence is legally and factually insufficient to support
the order authorizing administration of psychoactive medication. She argues that such an order must
be based on a valid order for inpatient mental health care and, due to the reasons asserted in her first
issue, the trial court’s order for inpatient mental health care is not valid.
            The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). In determining that there
is a need for psychoactive medication, the court is required to consider (1) the patient’s expressed
preferences regarding treatment with psychoactive medication; (2) the patient’s religious beliefs; (3)
the risks and benefits, from the perspective of the patient, of taking psychoactive medication; (4) the
consequences to the patient if the psychoactive medication is not administered; (5) the prognosis for
the patient if the patient is treated with psychoactive medication; and (6) alternatives to treatment
with psychoactive medication. Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003).
            At the hearing on the State’s application for court-ordered administration of psychoactive
medication, Dr. Srinivasan agreed with Dr. Self’s assessment that L.F.D. lacks the capacity to make
a rational and informed decision whether or not to consent to the administration of medication. Dr.
Srinivasan testified that treatment with the medications indicated on the application is in L.F.D.’s
best interest and would shorten her hospital stay. He further stated that L.F.D. had not expressed any
religious or constitutional reasons why she cannot take medication. L.F.D.’s reason for refusing
medication is her belief that she is not mentally ill. L.F.D. testified on her own behalf, claiming that
she does not need the medication. 
            Considering all of the evidence in the light most favorable to the finding, we conclude that
a reasonable trier of fact could have formed a firm belief or conviction that L.F.D. lacks the capacity
to make a decision regarding the administration of psychoactive medication. The evidence is legally
sufficient to support the order. See In re J.F.C., 96 S.W.3d at 266. In addressing factual
sufficiency, we must consider all of the evidence and give due consideration to evidence the
factfinder could reasonably have found to be clear and convincing. The doctor stated that L.F.D.
lacks the capacity to make a rational and informed decision as to whether or not to consent to the
administration of medication. The trial court could disregard L.F.D.’s testimony and rely entirely
on the doctor’s testimony. See In re C.H., 89 S.W.3d at 27. Accordingly, the evidence is such that
the trial court could reasonably form a firm belief or conviction about the truth of the State’s
allegations. See id. at 25. Thus, the evidence is factually sufficient to support the trial court’s
findings. We reject L.F.D.’s argument that the order authorizing administration of psychoactive
medication is not supported by clear and convincing evidence. See Tex. Health & Safety Code
Ann. § 574.106(a). We overrule L.F.D.’s second issue.
 
Disposition
            Having overruled each of L.F.D.’s issues, we affirm the trial court’s orders of commitment
for temporary inpatient mental health services and for administration of psychoactive medication. 



                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered April 13th, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.































(PUBLISH)